UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MATTHEW CASTANON,

                Plaintiff,                              Case No. 1:22-cv-11679

v.                                                          Honorable Thomas L. Ludington
                                                                         United States District Judge
UNITED PARCEL SERVICE, INC.
and ROBERT RANKIN,

                Defendants.
_____/

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO REMAND, REMANDING CASE, AND MAINTAINING JURISDICTION TO AWARD PLAINTIFF ATTORNEY'S FEES AND COSTS**

       Defendants have removed this case a second time arguing that the Labor Management Relations Act preempts Plaintiff's Michigan civil-rights claims. For the second time, it does not. The Supreme Court and the Sixth Circuit have held that the LMRA does not preempt state antidiscrimination laws. Similarly controlling Michigan Supreme Court precedent holds that federal law does not preempt discrimination claims brought against employers under Michigan's Elliot-Larsen Civil Rights Act.

       Defendants alternatively argue this Court has diversity jurisdiction because Plaintiff fraudulently joined the only nondiverse party. But, as a matter of law, a party who was identified in the first complaint is not "joined" and, therefore, cannot be fraudulently joined.

       For lack of federal subject-matter jurisdiction, the case will be remanded, again. And because Defendants lacked an objectively reasonable basis to remove the case, this Court will maintain jurisdiction to award Plaintiff attorney's fees.

I.

A.

Plaintiff Matthew Castanon, a man of Hispanic heritage, began working for UPS in 1991. ECF No. 1-3 at PageID.84. Twenty-six years later, UPS promoted him to drive a semitruck on two different routes. *Id.* at PageID.84–85. He was the only Hispanic driver assigned to those routes. *Id.* As a UPS employee, he was a union member of Teamsters Local 406. *See id.*

After he "transported the wrong trailer on a job" in October 2019, "Defendants conspired, all together, to discriminate against Plaintiff and replace him with a Caucasian driver, Brett Coley." *Id.* at PageID.85. Plaintiff alleges that Defendants repeatedly skipped discipline procedures outlined in the collective bargaining agreement (CBA). *Id.* He adds that two of Defendants' attempts "to terminate Plaintiff and replace him with a Caucasian were overturned" because they violated the CBA. *Id.*

Defendants nevertheless terminated his employment in October 2019, which Plaintiff alleges was for "putting touch-up paint on his truck." *Id.* Semitruck drivers at UPS commonly used touch-up paint to make their trucks look nicer, and Plaintiff's supervisors were well aware of that practice. *Id.* Thus, according to Plaintiff, the paint incident was a mere pretext for Defendants to terminate his employment and to replace him with a Caucasian employee. *Id.* The true reason, Plaintiff claims, is his Hispanic identity.

B.

On July 22, 2021, Plaintiff filed an amended three-count wrongful-termination complaint in the Tenth Circuit Court of Saginaw County. *See generally Castanon v. United Parcel Service, Inc.*, No. 21-44780-CD (Mich. Cir. Ct. Saginaw Cnty. filed July 22, 2021). He sued Local Union 406, UPS, and his then-supervisor Robert Rankin. ECF No. 1-3 at PageID.83–84. Plaintiff alleges

Defendants terminated his employment because of his Hispanic race in violation of Michigan's Elliot Larsen Civil Rights Act (ELCRA), MICH. COMP. LAWS § 37.2202. *Castanon v. United Parcel Serv., Inc.*, No. 1:21-CV-11942, 2022 WL 2752541, at *1 (E.D. Mich. July 6, 2022). He sought at least $25,000 in damages "in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just." *Id.*

Within a month, Defendant Local 406 removed the case under 28 U.S.C. § 1441, asserting that Plaintiff's Michigan ELCRA claims against Local 406 were completely preempted by § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a).[1] *Id.* Specifically, Local 406 argued that resolving Plaintiff's ELCRA claims would require interpretation of the CBA. *Id.*

In September 2021, Plaintiff stipulated to dismissing Local 406 and then filed a motion to remand the case, which was granted because the case was not properly removed and because Plaintiff's claims were not preempted by the LMRA. *Id.* at *2–5. Accordingly, the case was remanded to the Saginaw County Circuit Court. *Id.*

**C.**

Nine days later, Defendants UPS and Rankin removed the case, again, alleging the existence of both diversity jurisdiction and federal-question jurisdiction to justify removal. ECF No. 1. With respect to diversity jurisdiction, Defendants contend that (1) Plaintiff is a citizen of Michigan, (2) UPS is an Ohio corporation that maintains its principal place of business in Georgia, and (3) Robert Rankin, a Michigan citizen, should be disregarded in the removal analysis because Plaintiff cannot recover against Rankin as a matter of law. *Id.* at PageID.8, 11. As to

---

[1] For a discussion about how federal preemption is "the most effective defense raised by employers" in some other wrongful-discharge claims, see Shahabudeen K. Khan, *Employers Beware: What Are Employers' Obligations and Rights Given New Marijuana Legislations?*, 6 BELMONT L. REV. 74, 84 (2019).

federal-question jurisdiction, Defendants develop their own version of the argument from the previous remand: that § 301 of the LMRA preempts Plaintiff's state-law claims because addressing his state-law claims related to his termination and later grievance will require interpretation of his CBA. *Compare id.* at PageID.16–17, *with Castanon*, 2022 WL 2752541, at *1, 4.

The parties were directed to show cause why this case should not be remanded for untimely removal because Defendants filed the notice of removal more than one year after the case was filed in the state court. ECF No. 6.

In response, Plaintiff has filed a motion to remand.[2] ECF No. 7. He argues Defendants untimely removed the case, that he has not acted in bad faith to prevent removal, that there is no diversity jurisdiction, and that there is no federal-question jurisdiction over the case.

Defendants, by contrast, contend that Plaintiff has acted in bad faith, that there is diversity jurisdiction, and that federal-question jurisdiction exists. ECF No. 8.

As explained hereafter, Defendants have untimely removed the case, which will be excused because Plaintiff acted in bad faith. The case will nevertheless be remanded back to the Saginaw County Circuit Court because this Court does not have subject-matter jurisdiction over the case.

## II.

Plaintiff's Complaint only pleads claims under Michigan's ELCRA. *See generally* ECF No. 1 at PageID.24–31, 35–44, 54–63. Similarly, Defendants' Notice of Removal is exclusively grounded on Plaintiff's ELCRA claims. *See generally* ECF No. 1 at PageID.1–19.

---

[2] Although the filing is titled "Plaintiff's Response to Order of Show Cause," it "prays that this Court enter an Order denying Defendant's Motion for Removal." ECF No. 7 at PageID.592, 597. Accordingly, Plaintiff's brief will be construed as a motion to remand the above-captioned case.

The ELCRA is Michigan's antidiscrimination statute and prohibits "discriminat[ion] against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of . . . race." MICH. COMP. LAWS § 37.2202(1)(a).

**A.**

Defendants may remove "any civil action brought in state court of which the district courts of the United States have original jurisdiction . . . to the district court of the United States . . . where such action is pending." 28 U.S.C. § 1441(a).

If a case would implicate diversity jurisdiction, then it may not be removed "more than 1 year after commencement of the [state-court] action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." 28 U.S.C. § 1446(c)(1); *accord Forest Creek Townhomes, LLC v. Carroll Prop. Mgmt., LLC*, 695 F. App'x 908, 911–12 (6th Cir. 2017) (unpublished).

The removing defendant must prove not only "that the district court possesses jurisdiction," *Williamson v. Aetna Life Ins.*, 481 F.3d 369, 375 (6th Cir. 2007), but also that the plaintiff has prevented timely removal in bad faith, *Keller Logistics Grp. v. Navistar, Inc.*, 391 F. Supp. 3d 774, 778 (N.D. Ohio 2019) (citing *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 871 (6th Cir. 2000)).

Bad faith exists if "the plaintiff deliberately failed to disclose the actual amount in controversy to prevent removal." 28 U.S.C. § 1446(c)(3)(B)).

The one-year removal limit does not apply, however, to cases based on federal-question jurisdiction. *Iulianelli v. Lionel, L.L.C.*, 183 F. Supp. 2d 962, 966 n.7 (E.D. Mich. 2002) (citing 28 U.S.C. § 1446(b)); *see also* 28 U.S.C. § 1446(c). Because Plaintiff pleads only state-law claims, federal-question jurisdiction exists in this case only if federal law preempts his claims.

**B.**

The removing defendants must demonstrate federal-question jurisdiction. *A Forever Recovery, Inc. v. Twp. of Pennfield*, 606 F. App'x 279, 281 (6th Cir. 2015) (unpublished) (citing *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549 (6th Cir. 2006)).

Under the "well-pleaded complaint" rule, for a state-law claim to create federal-question jurisdiction, a federal question must appear on the face of the plaintiff's complaint. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). In this way, a complaint that relies on only state-law claims lacks subject-matter jurisdiction and, therefore, must be remanded to the state court. *Crawford v. TRW, Inc.*, 815 F. Supp. 1028, 1032 (E.D. Mich. 1993).

Defendants can avoid the "well-pleaded complaint" rule in only two limited circumstances. *Roddy v. Grand Trunk W. R.R.*, 395 F.3d 318, 322 (6th Cir. 2005). The first is if Congress expressly permits removal. *Id.*; *see, e.g.*, 15 U.S.C. § 77p(c) (allowing certain securities class actions to be removed to federal court). That exception does not apply here.

The second circumstance is if the "pre-emptive force of a statute is so 'extraordinary,' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Caterpillar*, 482 U.S. at 393 (quoting *Metro. Life Ins. v. Taylor*, 481 U.S. 58, 65 (1987)).

The Supreme Court has recognized complete preemption in only three statutory settings: Section 301 of the Labor Management Relations Act of 1947 (LMRA), 29 U.S.C. § 185; the Employee Retirement Income Security Act of 1975 ("ERISA"), 29 U.S.C. §§ 1001–1461; and § 85 and 86 of the National Bank Act, 12 U.S.C. §§ 85, 86. *See Beneficial Nat'l*, 539 U.S. at 7–9; *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 563 (6th Cir. 2007).

Defendants' Notice of Removal relies on only § 301 of the LMRA, 29 U.S.C. § 185. *See* ECF No. 1 at PageID.16. Section 301 of the LMRA provides that:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect of the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). In this way, Congress has evinced a preference for keeping interpretations of union contracts in the federal courts and thus outside state courts.

Thus, this case must be remanded only if Plaintiff's ELCRA claims would require the state trial court to interpret the CBA.

### III.

### A.

In order to establish federal subject-matter jurisdiction over Plaintiff's ELCRA claims, Defendants assert that "the Court must interpret the CBA to determine whether Plaintiff can establish that any comparators outside his protected class were treated differently or whether he was duly replaced by someone outside his protected class." ECF No. 8 at PageID.623–24 (first citing *Yelder v. Norfolk S. Ry. Co.*, No. 2:18-CV-10576-TGB, 2020 WL 1083785, at *8 (E.D. Mich. Mar. 6, 2020); then citing *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998); and then citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992))).[3]

---

[3] As a brief aside, none of the cases that Defendants cite involve the ELCRA. *Yelder v. Norfolk S. Ry. Co.*, No. 2:18-CV-10576-TGB, 2020 WL 1083785, at *1 (E.D. Mich. Mar. 6, 2020) (bringing claims under only Title VII and 42 U.S.C. § 1981); *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 348, 257–58 (6th Cir. 1998) (bringing claims under only the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623(a), and § 4112.14 of the Ohio Revised Code); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992) (bringing claims under only the Fourteenth Amendment, 42 U.S.C. §§ 1981 and 1983, Title VII, the ADEA, and §§ 4112.02(A) and 4112.99 of the Ohio Revised Code).

There is no federal-question jurisdiction because (1) Supreme Court precedent forecloses it, (2) Sixth Circuit precedent forecloses it, (3) Michigan Supreme Court precedent forecloses it, and (4) the interpretations of Michigan appellate courts demonstrate that Plaintiff's claims would not require interpretation of the CBA.

**1.**

The United States Supreme Court has explicitly held that "§ 301 does not pre-empt state anti-discrimination laws . . . . because Congress has affirmatively endorsed state antidiscrimination remedies in Title VII of the Civil Rights Act of 1964." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 412 (1988) (citations omitted); *accord Tisdale v. United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Can., Loc. 704*, 25 F.3d 1308, 1312 (6th Cir. 1994) ("It should be self-evident that if Congress did not preempt state civil rights actions by operation of federal civil rights law it could not have meant to do so through federal labor law.").

Put simply, *the LMRA never preempts ELCRA claims*, which is Michigan's civil-rights statute. Accordingly, there is no basis for the exercise of federal-question jurisdiction in this case.

**2.**

Even if the LMRA could preempt an ELCRA claim, Defendants are driving in the wrong direction. The state court's interpretation of state law—not the federal courts' interpretation of federal or state law—controls the issue of whether Plaintiff's ELCRA claims would require interpreting the CBA. In other words, the issue is whether the Michigan trial court—not this Court—would have to interpret the CBA to resolve Plaintiff's ELCRA claims. Indeed, federal court interpretations would be irrelevant considering that Congress's intent to keep state courts from interpreting federally grounded labor contracts is the only purpose of LMRA preemption.

Why would a federal court exercise LMRA preemption over a case that would not require a state court to interpret a union contract? Unless taking an ell beyond its inch, it would not.

Moreover, though Michigan "appellate courts' decisions are . . . persuasive," the "final decisions" of the Michigan Supreme Court control "issues of Michigan law." *Conlin v. Mortg. Elec. Registration Sys., Inc.*, 714 F.3d 355, 358–59 (6th Cir. 2013) (citing *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 762 (6th Cir. 2008)).

The Michigan Supreme Court has explicitly held that the LMRA does not preempt ELCRA discrimination claims brought against employers—even if the CBA "includes a provision designed to protect employees from race and gender discrimination." *Betty v. Brooks & Perkins*, 521 N.W.2d 518, 524, 526–27 (Mich. 1994). Thus, under Michigan law, too, the LMRA might never preempt an ELCRA discrimination claim. *See id.* at 527 (holding that "a claim against [an] employer under the [ELCRA] for damages," alleging "racial and gender-based discrimination in the workplace" did "not require an interpretation of the [CBA]" and was therefore "not preempted by § 301 of the LMRA"). For "state antidiscrimination statutes confer nonnegotiable rights that are independent of any collective-bargaining agreement. . . . whether based on age, race, handicap, religion, or national origin." *Id.* at 524 (collecting cases).

For this reason, there is no federal-question jurisdiction in this case.

### 3.

Michigan appellate courts would reach the same conclusion. In every available ELCRA discrimination case involving a union contract or collective bargaining agreement, Michigan appellate courts have never even whispered of a CBA as "relevant" in determining whether the employee was similarly situated to other employees. *See, e.g.*, *Major v. Vill. of Newberry*, 892 N.W.2d 402, 415 (Mich. Ct. App. 2016) (comparing purportedly "similarly situated" union

electricians' hours of training, position, advancement progress, completed training, ability to complete tasks, and gender); *Burkhardt v. Flint Cmty. Schs.*, No. 347319, 2020 WL 1488659, at *3–4 (Mich. Ct. App. Mar. 24, 2020) (unpublished) (per curiam) (comparing purportedly "similarly situated" union teachers' assignments, locations, and compensations paradigms). Even when the employment contract is at issue in a nonunion case, the employment contract is not discussed as a "relevant" factor of the "similarly situated" analysis. *See, e.g.*, *Johnson v. Comer Holding LLC*, No. 288719, 2010 WL 785935, at *8–9 (Mich. Ct. App. Mar. 9, 2010) (unpublished) (per curiam) (comparing purportedly "similarly situated" automotive managers' "comparable responsibilities and performance issues," despite claim that breach of employment contract violated the ELCRA).

Viewed under Michigan law, Plaintiff advances at least one theory of discrimination that would not require interpretation of the CBA. Granted, Plaintiff's amended complaint alleges "[t]hat Defendants violated various policies relating to discipline and discharge, which further evidences Defendants' discriminatory intent." ECF No. 1-2 at PageID.73. That allegation, however, is separate from Plaintiff's contention "[t]hat Defendants further permitted similarly situated employees, outside Plaintiff's protected class, to engage in the same behavior as Plaintiff without being terminated." *Id.* at PageID.73.

Indeed, Michigan courts look to the plaintiff's arguments to determine whether employees are similarly situated, *see, e.g.*, *Davis v. Motorcity Casino*, No. 299505, 2011 WL 5966218, at *3 (Mich. Ct. App. Nov. 29, 2011) ("To show that he was treated differently than similarly situated Caucasian female employees, plaintiff points to . . . ."), which makes sense because "the plaintiff is the master of his complaint," *Trowell v. Providence Hosp. & Med. Centers, Inc.*, 502 Mich. 509, 540, 918 N.W.2d 645, 661 & n.51 (Mich. 2018) (en banc) (per curiam) (Viviano, J., concurring in

result only, joined by Bridget & Clement, JJ.) (quoting *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 943–44 (6th Cir. 1994)). Indeed, it is Plaintiff's burden to establish a *prima facie* case of discrimination, *Hazle v. Ford Motor Co.*, 628 N.W.2d 515, 521 (Mich. 2001), which he must prove with evidence beyond his complaint, *El-Khalil v. Oakwood Healthcare, Inc.*, 934 N.W.2d 665, 671 (Mich. 2019) (en banc) (per curiam) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–511 (2002)).

There are no pleadings from Plaintiff arguing that his claims require interpretation of the CBA. There is thus no way to determine if he will rely on the CBA as a reason that he was similarly situated to some other employee. On the contrary, Plaintiff has explicitly rejected such a possibility. ECF No. 7 at PageID.597 ("[A]n interpretation of Plaintiff's [CBA] is not needed to determine if Plaintiff was discriminated against due to his race.").

Simply put, even if precedent from the United States Supreme Court, Sixth Circuit Court of Appeals, Michigan Supreme Court, and Michigan appellate courts did not foreclose Defendants' arguments, the state trial court could resolve Plaintiff's ELCRA claims without ever addressing the CBA. *See, e.g.*, *Castanon v. United Parcel Serv., Inc.*, No. 1:21-CV-11942, 2022 WL 2752541, at *4 (E.D. Mich. July 6, 2022); *Burzynski v. UAW Loc. 699*, No. 1:21-CV-12650, 2022 WL 2359652, at *5 (E.D. Mich. Feb. 18, 2022); *Everett v. UAW Loc. 699*, No. 1:21-CV-12648, 2022 WL 2359654, at *5 (E.D. Mich. Feb. 18, 2022).

Accordingly, there is no federal-question jurisdiction in this case. In this way, Defendants' removal is proper only if this Court has diversity jurisdiction over this case. As explained below, it does not.

**B.**

Plaintiff's bad faith exempts the one-year removal limit.

Plaintiff filed this case in state court on June 24, 2021. *Castanon v. United Parcel Service, Inc.*, No. 21-44780-CD (Mich. Cir. Ct. Saginaw Cnty. filed June 24, 2021). Thus, the statutory removal deadline of one year ended on June 24, 2022. *See* 28 U.S.C. § 1446(c)(1). But Defendants removed the case on July 21, 2022—27 days too late. *See* Notice of Removal, ECF No. 1 (filed July 21, 2022). In this way, Defendants' removal is untimely. 28 U.S.C. § 1446(c)(1).

Although their removal was untimely, Defendants have alleged Plaintiff acted in bad faith to prevent timely removal. Plaintiff amended his complaint, lowering the alleged damages from exceeding $75,000 to exceeding $25,000. *Compare* ECF No. 1 at PageID.31 (requesting more than $75,000), *with* ECF No. 1-2 at PageID.77 (requesting more than $25,000). This gives rise to a reasonable inference of bad faith. *But see* Leo Tolstoy, War and Peace 449 (Louise Maude & Aylmer Maude trans., Everyman's Library 1992) (1867) ("All we can know is that we know nothing. And that's the height of human wisdom.").

Plaintiff's deposition sheds light on his intentions. When defense counsel asked Plaintiff how much money he was seeking, his "best judgment" was that his case was worth "3 to 4 million dollars." ECF No. 1-7 at PageID.149. Plaintiff's counsel objected to this line of questioning because Plaintiff "didn't ask for anything," as his "attorney's signature [is] on that document." *Id.* Elaborating on the damages that he seeks, Plaintiff stated he "wouldn't accept 25,000" "from anybody that [he] sued." *Id.* at PageID.150. He added not only that he "read" his complaints but also that "all the allegations [were] honest and correct." *See id.* at PageID.149. The more reasonable inference to draw here is that Plaintiff's counsel "failed to disclose the actual amount in controversy to prevent removal," warranting exception of the one-year removal limit. 28 U.S.C. § 1446(c)(3)(B).

Yet this case will be remanded because, in any event, there is no basis for the exercise of diversity jurisdiction.

## C.

District courts have jurisdiction over civil actions if more than $75,000 is at issue between either citizens of different U.S. states or a citizen of a U.S. state and a citizen of a foreign nation. 28 U.S.C. § 1332(a).

It is well established that "complete diversity" exists if "the citizenship of each plaintiff is diverse from the citizenship of each defendant." *Geoshack Can. Co. v. Hendriks*, No. 22-3047, 2022 WL 2387340, at *1 (6th Cir. June 28, 2022) (quoting *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996)).

As pled, the parties in this case are not completely diverse. *See* ECF No. 1-2 at PageID.68–69 (pleading that Plaintiff is a citizen of Michigan and Defendant Rankin is a citizen of Michigan).

But "in certain contexts," including removal, district courts must in "look behind the pleadings to ensure that parties are not improperly creating or destroying diversity jurisdiction." *Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 162 (2014) (per curiam) (citing *Wecker v. Nat'l Enameling & Stamping Co.*, 204 U.S. 176, 179–80 (1907)).

Defendants advance two theories for how Plaintiff fraudulently joined Defendant Rankin to defeat diversity jurisdiction. ECF No. 8 at PageID.617 ("Defendants' allegation of fraudulent joinder in their Notice of Removal is sufficient to determine that the one-year limitation under § 1446(c)(1) is not applicable in this case.").

But neither argument holds water. *See Roberts v. Mars Petcare US, Inc.*, 874 F.3d 953, 958 (6th Cir. 2017) ("No one can say that [Plaintiff] joined [Rankin] to this lawsuit in order to defeat diversity because he did not *join* [Rankin] at all. [Plaintiff] named [Rankin] as [an] original

defendant in the lawsuit . . . ."); ECF No. 1-2 at PageID.68 (identifying Rankin as an original defendant in this case). Therefore, Rankin was not fraudulently joined.

Yet this Court will nevertheless address the merits of one of Defendants' fraudulent-joinder allegations.[4]

Defendants claim Rankin was not "properly joined and served" because Plaintiff "never filed a Proof of Service to the State Court docket indicating that Rankin has been served with the State Court summons." ECF No. 1 at PageID.9. Defendants add that "[t]o date, there is no evidence on the record that Rankin has been properly served." *Id.*

But Plaintiff has not had the opportunity to serve Defendants at the state level. Defendants first removal was one month before Plaintiff's deadline to serve the summons. *Compare Castanon v. United Parcel Service, Inc.*, No. 21-44780-CD (Mich. Cir. Ct. Saginaw Cnty. filed Aug. 3, 2021) (setting summons to expire on September 23, 2021), *with Castanon v. United Parcel Serv., Inc.*, No. 1:21-CV-11942, 2022 WL 2752541, at *1 (E.D. Mich. July 6, 2022) (filing notice of removal on August 20, 2021). Then, for reasons unknown, the case received no attention for nearly ten months—until June 16, 2022—after which this Court remanded it 39 days later. *See Castanon*, 2022 WL 2752541, at *1 (remanding case). And Defendants removed the case, again, 15 days later. *See* ECF No. 1 (filed July 21, 2022). Here it sits, no summons served. In sum, Plaintiff did not skimp on serving Rankin to defeat diversity.

---

[4] The other argument would require opining on the merits of Plaintiff's state-law claims, which should be avoided to respect the state court's determination of state-law issues. Laura S. Fitzgerald, *Suspecting the States: Supreme Court Review of State-Court State-Law Judgments*, 101 MICH. L. REV. 80, 178 n.131 (2002) ("In most cases, comity and respect for federalism compel us to defer to the decisions of state courts on issues of state law." (quoting Bush v. Gore, 531 U.S. 98, 112, (2000) (Rehnquist, C.J., concurring, joined by Scalia & Thomas, JJ.))).

For these reasons, there is no diversity jurisdiction and the case will be remanded for further proceedings.

Notably, this Order will not impede the state court's ability to determine whether Defendants' conduct accorded with the CBA or whether Defendants' defenses require interpretation of the CBA. In other words, the state court may still interpret the CBA, if necessary, to resolve Plaintiff's ELCRA claims.

**D.**

As a final matter, "[a]bsent unusual circumstances," this Court may award attorney's fees under § 1447(c) if Defendants "lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005).

This case was no "close question." *See id.* at 141. As explained above, controlling precedent from the United States Supreme Court, Sixth Circuit Court of Appeals, and Michigan Supreme Court foreclosed all of Defendants' arguments. Defendants thus have no basis to argue that their removal was not objectively unreasonable.

Even if not frivolous, the removal "was sufficiently weak so that . . . Plaintiff is entitled to attorney fees and costs." *Gallagher v. AM Int'l, Inc.*, No. 91-73471, 1992 WL 92396, at *1 (E.D. Mich. Jan. 3, 1992). As explained at length, Defendants did not cite even an inkling of law that reasonably supported their positions.

Further, Defendants' removal has improperly delayed this litigation for years. *See, e.g.*, *Morris v. Bridgestone/Firestone, Inc.*, 985 F.2d 238, 239 (6th Cir. 1993). More than one year has passed and, as Defendants explained, Plaintiff has yet to even serve a summons on one of the defendants, which as this Court explained was due to Defendants' *en passant* attempts to capture federal jurisdiction.

For these reasons, Defendants' removal was objectively unreasonable. Although the case will be remanded to the state court for further proceedings, this Court will maintain jurisdiction over the case for only the purpose of ensuring that Plaintiff is awarded attorney's fees related to this removal. *Stallworth v. Greater Cleveland Reg'l Transit Auth.*, 105 F.3d 252, 257 (6th Cir. 1997) ("[A] district court, after issuing an order of remand, may make an award of attorney fees and costs in a separate order.").

### IV.

Accordingly, it is **ORDERED** that Plaintiff's Motion to Remand, ECF No. 7, is **GRANTED**.

Further, it is **ORDERED** that the above-captioned case is **REMANDED** to the Tenth Circuit Court of Saginaw County.

Further, it is **ORDERED** that Plaintiff is **AWARDED** to attorney's fees and costs related to this removal in an order following remand.

Further, it is **ORDERED** that this Court will **MAINTAIN** jurisdiction over the above-captioned case for only the purpose of ensuring that Plaintiff is awarded attorney's fees and costs related to this removal.

Further, it is **ORDERED** that the parties are **DIRECTED** to show cause for how much money Defendants must pay Plaintiff in attorney's fees and costs related to this removal. The parties' briefs may be no longer than 10 pages and are due **on or before September 6, 2022**.

**This is not a final order and does not close the case**.

Dated: August 26, 2022                    s/Thomas L. Ludington
                                          THOMAS L. LUDINGTON
                                          United States District Judge